UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANTHONY A. BEARD,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | CASE NO.   C07-5187FDB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for December 21, 2007 |

This matter is before the Court on defendant's motion to dismiss plaintiff's complaint for judicial review of the denial of his application for disability insurance benefits (Dkt. #5-2) pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief may be granted (Dkt. #11). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing defendant's motion, plaintiff's response to that motion and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 1998, plaintiff filed an application of disability insurance benefits, which was

REPORT AND RECOMMENDATION
Page - 1

1 denied at the initial level of review. (Dkt. #12-4, Exhibit 2, p. 24).  On reconsideration, plaintiff was found
2 to be disabled from May 1, 1999, to July 2000. (Id. at p. 25).  In a notice dated July 12, 1999, plaintiff was
3 told, however, that this was "not a favorable allowance." (Id. at p. 30).

4       In a declaration dated November 14, 2005, plaintiff states that he and his children began receiving
5 "Social Security benefits not long after" he received the July 12, 1999 reconsideration notice. (Id. at p. 26).
6 Nevertheless, because plaintiff was informed that the decision regarding his benefits was not favorable, on
7 October 13, 1999, he requested a hearing before an administrative law judge ("ALJ"). (Id. at pp. 13, 26).
8 A hearing was held before an ALJ on July 25, 2000, at which plaintiff appeared – electing to proceed
9 without representation despite being advised of his right to have counsel present – and testified. (Id.).  A
10 vocational expert also appeared and testified at that hearing. (Id. at p. 13).

11       On November 20, 2000, the ALJ issued a decision, in which plaintiff was determined to be not
12 disabled, and therefore not entitled to disability benefits. (Id. at pp. 13-18).  Specifically, the ALJ found
13 plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.
14 (Id.).  The record also contains a form "Notice of Decision – Unfavorable," dated the same date therewith,
15 from the ALJ, and addressed to plaintiff, stating that the ALJ's decision is enclosed, advising plaintiff of
16 his right to appeal that decision to the Appeals Council and how to do so. (Id. at pp. 10-12).  That notice
17 also informed plaintiff that he must file any such appeal within 60 days of receipt of the notice, and that
18 receipt within "5 days after the date shown" on the notice would be assumed, unless he could show he did
19 not receive it within that time period. (Id. at p. 10).

20       On January 6, 2006, plaintiff filed a request for an extension of time for filing a request for review
21 of the ALJ's decision with the Appeals Council. (Id. at p. 1).  Attached to that request is a memorandum
22 from plaintiff's attorney, dated November 6, 2005, arguing good cause existed under 20 C.F.R. § 404.911
23 for plaintiff's late request for review. (Id. at pp. 1-6).  In his November 14, 2005 declaration, plaintiff also
24 sets forth the reasons why he thought good cause existed in his case:

25       I never received the written notice from the SSA [Social Security
Administration] that explained the result of [sic] hearing that I went to in July 2000.
26 Although I now understand that the ALJ issued a written decision in my case in
November 2000 that may have been mailed to me, I did not receive it.
27
      There were some mail thefts in my neighborhood around the fall of 2000.
28 Several neighbors told me that they had mail stolen from their mailboxes at around that
time.  Attached to this declaration is a letter from my next door neighbor, Steven M.

REPORT AND RECOMMENDATION
Page - 2

> Cramer, [sic] wrote regarding these mail thefts. If the November 2000 notice of the ALJ decision in my case was mailed to me, I suspect that it may have been stolen from my mailbox.
>
> Because I never received the ALJ's written decision in my case, I recall that approximately six months after the July 2000 ALJ hearing I called the local Social Security office to inquire about [sic] result of the hearing. I recall that the person I spoke to asked if I was still receiving benefits. Since my children and I were still receiving monthly Social Security benefits, the person I spoke to said that the ALJ decision must have been favorable, and I should not be concerned that I did not receive the written decision.
>
> My sons and I continued to receive monthly Social Security benefits for approximately five years, until the fall of 2004. In September 2004, I received notice of a $107,000 Social Security overpayment in my case. Although I did not receive a termination notice, our Social Security benefits stopped in approximately November 2004.
>
> I was told that our Social Security benefits would stop when I contacted the local Social Security office about the overpayment notice I received in September 2004. I asked if there was anything that I could do about the termination of our benefits, I was told that there was nothing we could do because it was too late to appeal the administrative law judge's 11/2000 decision in my case.

(Id. at pp. 27-28). As mentioned by plaintiff in his declaration, attached thereto is a letter written by his neighbor, which reads in relevant part:

> In the fall of 2000, my neighbor and I were having problem [sic] of mail not being delivered or stolen. I had mail that was sent from the V.A[.] [Veterans Administration] disappeared [sic] and have found mail on the ground and on the roadway. So I know what a hassel [sic] it is to be told a letter was sent to me and to find out I never received that letter. In my case I notified the V.A[.] and mail man [sic] of the problem.

(Id. at p. 29).

On February 15, 2007, the Appeals Council issued a decision dismissing plaintiff's request for review, finding specifically in relevant part as follows:

> The regulations provided that the Appeals Council may dismiss a request for review where the claimant has failed to file the request within the stated period of time and the time for filing has not been extended (20 CFR [§] 404.971). The time period will be extended if good cause is shown for missing the deadline (20 CFR [§] 404.968(b)).
>
> The request for review was filed over five years late. The claimant contends that he did not receive a copy of the hearing decision issued on November 20, 2000. The Council notes that the address to which the hearing decision was mailed is the same as the claimant's current mailing address. Absent evidence to the contrary, a properly addressed decision is presumed to have been received. The Council notes further that the file contains a notice to the claimant dated March 31, 2004, advising him that his benefits would terminate. The claimant did not file an appeal in response to the notice of termination or when his benefits were terminated. He also did not file an appeal on

REPORT AND RECOMMENDATION
Page - 3

November 19, 2004, when he filed a new claim for disability benefits.[1]

The Council also does not find evidence of a mental impairment such that would prevent the claimant from being able to exercise his appeal rights.

The Appeals Council, therefore, finds that there is no good cause to extend the time for filing and, accordingly, dismisses the claimant's request for review. The Administrative Law Judge's decision stands as the final decision of the Commissioner.

(Id. at p. 8).

On April 17, 2007, plaintiff filed a complaint in this Court seeking review of both the ALJ's and the Appeals Councils' decisions. (Dkt. #1 and #5). In his complaint, plaintiff claims that he first obtained legal representation "[i]n late 2005," and that his attorney filed his request for review of the ALJ's decision with the Appeals Council in late November 2005.[2] (Dkt. #5). On July 26, 2007, defendant filed his motion to dismiss. (Dkt. #11). On August 13, 2007, plaintiff filed his response thereto. (Dkt. #16). Defendant has not filed any reply to plaintiff's response. However, given that the deadline for doing so has long passed, the undersigned finds this matter is now ripe for review.

## DISCUSSION

I.      Standard of Review

A challenge to the Court's subject matter jurisdiction is "treated as brought under" Fed. R. Civ. P. 12(b)(1), "even if improperly identified by the moving party as brought under" Fed. R. Civ. P. 12(b)(6). St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989); see also Corrie v. Caterpillar, Inc., 503 F.3d 974, 980 (9th Cir. 2007) (motion to dismiss attacking substance of complaint's jurisdictional allegations treated as if brought under Fed. R. Civ. P. 12(b)(1)). Thus, while defendant has brought his motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), because the subject matter jurisdiction of the Court is being challenged, the merits of that motion shall be analyzed under the standards governing those brought pursuant to Fed. R. Civ. P. 12(b)(1).

Unlike motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), "a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in

---

[1] Neither the March 31, 2004 benefits termination notice nor the November 19, 2004 claim for disability is contained in the record before the Court.

[2] As noted above, however, while the legal memorandum that accompanied plaintiff's request for an extension of time to file his request for review is dated November 6, 2005, the request itself was postmarked January 6, 2006, and received by the Social Security Administration on that date.

REPORT AND RECOMMENDATION
Page - 4

1 so doing rely on affidavits or any other evidence properly before the court." St. Clair, 880 F.2d at 201; see

2 also Corrie, 503 F.3d at 980.  The party opposing the motion then must "present affidavits or any other

3 evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter

4 jurisdiction." St. Clair, 880 F.2d at 201.  As such, it is not an abuse of the Court's discretion to consider

5 such"extra-pleading material," even when "necessary to resolve factual disputes." Id.

6      The Court may not decide the issue of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) if

7 "the jurisdictional issue and the issue on the merits are . . . factually so 'completely intermeshed,' that 'the

8 question of jurisdiction is dependent on decision of the merits.'" Id. at 202 (citations omitted).  In this case,

9 however, these issues are not so intermeshed as to preclude judicial review under Fed. R. Civ. P. 12(b)(1),

10 and indeed the issue of the Court's authority to review the ALJ's decision is completely divorced from

11 plaintiff's claims regarding the actual merits of that decision.

12      Lastly, as is true for motions brought pursuant to Fed. R. Civ. p. 12(b)(6), "all disputed facts" are to

13 be "resolved in favor of the non-moving party." Costco v. United States, 248 F.3d 863, 865-66 (9th Cir.

14 2001); Murphy v. Schneider National, Inc., 362 F.3d 1133, 1139 (9th Cir. 2004); McNatt v. Apfel, 201

15 F.3d 1084, 1087 (9th Cir. 2000) (court favorably views facts alleged to support jurisdiction); United States

16 v. One 1997 Mercedes, E420, 175 F.3d 1129, 1130 n.1 (9th Cir. 1999) ("Because the court is reviewing in

17 part an order granting in part and denying in part a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and

18 12(b)(6), all allegations of material fact stated in the complaint are taken as true and construed in the light

19 most favorable to the nonmoving party.").

20      Plaintiff argues the Court should not consider defendant's motion without first requiring defendant

21 to file an answer and a copy of the administrative record.  Such is required by 42 U.S.C. § 405(g) plaintiff

22 asserts, and would show the ALJ's decision to be invalid on its face.  Plaintiff though misses the point of a

23 motion to dismiss for lack of subject matter jurisdiction.  If jurisdiction to address a matter pending before

24 it is lacking, the Court does not get to the merits of the underlying case.  However, lack of merit is exactly

25 what plaintiff asserts the complete record will show.  On the other hand, plaintiff has failed to show there

26 is any additional evidence not currently before the Court that would have any bearing on the Court's

27 ability to resolve the issue of subject matter jurisdiction.

28      In addition, plaintiff's reading of the language of 42 U.S.C. § 405(g) regarding this particular issue

is inaccurate. It is true that this statutory provision states the Commissioner "shall file a certified copy of the transcript of record including the evidence upon which the findings and decision complained of are based" "[a]s part of the Commissioner's answer." There is no requirement though that an answer be filed prior to the filing of a motion to dismiss under Fed. R. Civ. P. 12(b)(1) or Fed. R. Civ. P. 12(b)(6). Indeed, Fed. R. Civ. P. 12(b) expressly provides that the defenses set forth therein, including lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted "may at the option of the pleader be made by motion," which, if so made, must be done before the answer is filed. Nothing in 42 C.F.R. § 405(g) indicates that prior filing of the answer, and thus the record, is required.

II.     Finality of the Commissioner's Decision

Defendant argues in his motion that the Court has no jurisdiction to review the denial of plaintiff's application for disability benefits, because plaintiff's request for judicial review was not made "within sixty days after the mailing to him of notice of" the Commissioner's "final decision" to deny that application as required by 42 U.S.C. § 405(g). Section 405(g) reads in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

Thus, as written, this provision "clearly limits judicial review" to a "final decision" of the Commissioner "made after a hearing." Califano v. Sanders, 430 U.S. 99, 108 (1977).

The meaning of the term "final decision" in Section 405(g), however, is left to the Commissioner "to flesh out by regulation." Weinberger v. Salfi, 422 U.S. 749, 766 (1975); see also Mathews v. Eldridge, 424 U.S. 319, 330 (1976) ("[U]nder s 405(g) the power to determine when finality has occurred ordinarily rests with the Secretary."). According to those regulations, claimants have a "right to judicial review" only after they have taken all "necessary administrative steps" to complete the "administrative review process." 20 C.F.R. § 404.900(a). These steps consist of the initial determination regarding a claimant's entitlement to benefits, reconsideration of that determination, a hearing before an ALJ, and review by the Appeals Council of the ALJ's decision. Id. Each of these steps, however, "usually must be requested within certain time periods," and in the above order. Id.

With respect to the time period for instituting a civil action seeking judicial review in federal court,

the Commissioner's regulations require that any such action "be instituted within 60 days after the Appeals Council's notice of denial of request for review" of the ALJ's decision or the "notice of the decision by the Appeals Council is received by" the claimant, unless "extended by the Appeals Council upon a showing of good cause." 20 C.F.R. § 422.210(c); see also 20 C.F.R. 404.981 (claimant may file action in federal court within 60 days after date claimant receives notice of Appeals Council's action). The date of receipt of the notice of the decision of the Appeals Council, as well as that of the ALJ, is "presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." 20 C.F.R. § 422.210(c); see also 20 C.F.R. § 404.901 ("Date you receive notice means 5 days after the date on the notice, unless you show us that you did not receive it within the 5-day period.").

Of particular relevance here, certain administrative actions "are not subject to the administrative review process" or judicial review, including denials of requests "to extend the time period for requesting review of a determination or a decision." 20 C.F.R. § 404.903(j). Pursuant to 20 C.F.R. § 404.968(b), a claimant may request an extension of time for filing a request for review of an ALJ's decision with the Appeals Council. This is different from a request for review of the ALJ's decision that is timely filed with the Appeals Council within the 65-day time period for doing so noted above. See 20 C.F.R. §§ 404.901, 404.968(a). In either situation, if the Appeals Council denies a request for review or, as here, a request for an extension of time for filing a request for review, "the decision of the ALJ represents the final decision of the Commissioner." Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004); see also 20 C.F.R. §§ 404.968, 404.981.

Plaintiff asserts that contrary to defendant's statements, she did timely file a request for review of the ALJ's decision with the Appeals Council. Specifically, plaintiff argues he was not required to file a request for review with the Appeals Council within the 65-day period as set forth in 20 C.F.R. §§ 404.901. Rather, plaintiff claims that pursuant to 20 C.F.R. § 404.968, he had "60 days after the date" he received notice of the ALJ's decision within which to file his request. This is an incorrect reading of the regulatory framework, however, as 20 C.F.R. § 404.901 expressly states that "[a]s used in this subpart," the date the notice is received by the claimant "means 5 days after the date on the notice," unless the claimant shows he or she "did not receive it within" that period. Both 20 C.F.R. § 404.901 and 20 C.F.R. §404.968 are in 20 C.F.R. Part 404, Subpart J, and thus the presumption of receipt within 65 days from the date that appears on the notice applies here.

REPORT AND RECOMMENDATION
Page - 7

1   Plaintiff further asserts that even if his request was untimely, he had good cause for having filed
2   that request late. That assertion assumes, however, that the Court has jurisdiction to review the Appeals
3   Council's decision to deny his request for an extension to file a request for review. As discussed above
4   though, a claimant is entitled to judicial review only of a "final decision" made after a hearing as defined
5   by the Commissioner in his regulations. Also as discussed above, according to those same regulations, the
6   denial of a request to extend the time period for requesting review of a decision is not subject to either the
7   administrative review process or judicial review. See 20 C.F.R. § 404.903(j). As such, the Court is
8   without jurisdiction to review the Appeals Council's decision here.[3] It also is without jurisdiction to
9   review the Commissioner's "final decision" in this matter, i.e. the ALJ's decision, unless either the
10  statutory 60-day time limit for filing a civil action set forth in 42 U.S.C. § 405(g) is waived or another
11  exception to the rule precluding judicial review applies as discussed below.

12  III.   <u>Waiver and Equitable Tolling</u>

13  As indicated above, the requirement that a claimant seek judicial review of a "final decision" made
14  after a hearing by filing a civil action in federal court within 60 days of mailing the notice thereof to him or
15  her, may be waived by either the Commissioner or the Court. <u>Johnson v. Shalala</u>, 2 F.3d 918, 923 (9th Cir.
16  1993). Plaintiff argues that equitable tolling should be applied here, and that the Court thus should waive

---

[3] Even if the Court did have such jurisdiction, it is unlikely that good cause has been established in this case. In requesting an extension of time to request review of an ALJ's decision, a claimant must "give the reasons why the request for review was not filed within the stated time period," and show he or she had "good cause for missing the deadline." 20 C.F.R. § 404.968(b). To determine whether "good cause" exists, the Commissioner considers, among other things, what circumstances prevented the claimant from making a timely request, and whether any action taken by the Commissioner misled the claimant. 20 C.F.R. § 404.911(a)(1) and (2). Examples of circumstances where good cause may be found to exist, include the following: (a) the claimant was trying "very hard" to find "necessary information" to support his or her claim, but did not find it "within the stated time periods"; (b) the Commissioner gave the claimant "incorrect or incomplete information about when and how to request administrative review or to file a civil suit"; and (c) the claimant "did not receive notice of the determination or decision." 20 C.F.R. § 404.911(b)(4), (6) and (7).

Plaintiff claims he did not receive notice of the ALJ's decision, but, given the presumption of receipt of such notice set forth in 20 C.F.R. § 404.901, and the burden of proof on the claimant to show otherwise contained therein and in 20 C.F.R. § 404.968(b), it is questionable as to whether plaintiff's stated "suspicion" that it was stolen during the fall of 2000 is sufficient, and, indeed, it appears the Appeals Council agreed with this assessment. (<u>See</u> Dkt. #12-3, Exhibit 2, p. 8). Further, while it may have been reasonable for plaintiff to wait six months following his hearing to inquire as to the status of his case, no explanation was provided as to why he did not request a written copy of that decision at the time to confirm that the ALJ in fact had ruled in his favor, as he claims he had been told by someone at his local Social Security office. Similarly, while plaintiff claims he received no notice regarding the termination of his benefits in the fall of 2004, he again fails to explain why it should not be presumed that he indeed received such a notice that appears to have been sent to him at the end of March 2004. (<u>See</u> id.). Lastly, despite plaintiff's statement that he was told there was nothing he could do to appeal the ALJ's decision, he does not explain why he did eventually file a request for an extension of time to request a review of that decision, and waited for over a year after his benefits were terminated to do so, even though he had filed a new application for disability benefits back in November 2004. (<u>See</u> id.).

REPORT AND RECOMMENDATION
Page - 8

1 the 60-day filing rule, again asserting the circumstances which caused him to file his request for review
2 late and the actions of the Commissioner constitute good cause. Defendant argues equitable tolling applies
3 in these cases only "when the plaintiff is prevented from asserting a claim by wrongful conduct on the part
4 of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to
5 file a claim on time." Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999).

6       It is true, as plaintiff asserts, that the application of the traditional principal of equitable tolling to
7 Section 405(g)'s 60-day filing rule has been found to be "fully 'consistent with the overall congressional
8 purpose' and is 'nowhere eschewed by Congress,'" Bowen v. City of New York, 476 U.S. 467 480 (1986)
9 (citing Honda v. Clark, 386 U.S. 484, 501 (1967)). This statement by the Supreme Court, however, is
10 hardly inconsistent with the above limitations on the application of equitable tolling noted by the Ninth
11 Circuit in Stoll. Indeed, the Supreme Court in Bowen also expressly stated that equitable tolling should be
12 applied only if "the equities in favor of tolling" the 60-day rule are "so great that deference to the agency's
13 judgment is inappropriate." Id. (citing Mathews, 424 U.S. at 330).

14       In addition, the Supreme Court found equitable tolling to have been appropriate in Bowen, because
15 "the government's secret policy prevented claimants from discovering a violation of their rights."
16 Johnson., 2 F.3d at 923. It seems, furthermore, that the Third Circuit has interpreted Bowen "to hold that
17 equitable tolling is appropriate only when governmental conduct prevents claimants from recognizing that
18 they have a valid claim." Id. (citing Bailey v. Sullivan, 885 F.2d 52, 63-64 (3rd Cir. 1989) (emphasis
19 added). That Court of Appeals went on to hold that because the regulations at issue in that case were
20 "openly applied," the claimants "should have challenged" them "within the statute of limitations." Id.
21 (quoting Bailey, 885 F.3d at 64). The Ninth Circuit in Johnson appears to have adopted this reasoning, as
22 apparently has the Seventh Circuit. See id.; Johnson v. Sullivan, 922 F.2d 346, 354 (7th Cir. 1990).

23       Plaintiff argues that while the Commissioner's conduct in this case was not secretive, it effectively
24 prevented him from pursuing his right to appeal the ALJ's decision. Even if the undersigned were to find
25 that equitable tolling also applies to regulations that are "openly applied," contrary to the holdings of the
26 Third, Seventh and Ninth Circuit, as well as that of Supreme Court, on this issue, plaintiff has not shown,
27 for the same reasons noted in footnote 2 above, that the equities here are so great, defendant's conduct was
28 so wrongful, and the circumstances were so beyond his control that he could not have timely filed a

REPORT AND RECOMMENDATION
Page - 9

1  request for review of the ALJ's decision with the Appeals Council. Accordingly, deference to the

2  Commissioner's judgment would not be inappropriate here, such that equitable tolling should be applied.

3  IV.     Plaintiff's Constitutional Claim

4       Although, as discussed above, the Court lacks jurisdiction to review this matter due to plaintiff's

5  failure to comply with Section 405(g)'s 60-day filing rule, there are some cases where, as with equitable

6  tolling, "a claimant's interest in having a particular issue resolved promptly is so great that deference to the

7  agency's judgment [regarding when finality in the administrative review process occurs] is inappropriate."

8  Mathews, 424 U.S. at 330. These are cases involving challenges to the Commissioner's decisions made

9  "on constitutional grounds," to which is applied "the well-established principle that when constitutional

10 questions are in issue, the availability of judicial review is presumed." Califano, 430 U.S. at 109. This is

11 because such questions "obviously are unsuited to resolution in administrative hearing procedures," thus

12 making access to the courts "essential" to deciding them, and "a statutory scheme" will not be interpreted

13 as foreclosing judicial review, unless there is "clear and convincing" evidence of congressional intent to do

14 so. Id. (citation omitted); see also Boettcher, 759 F.2d at 721.

15      A claimant's constitutional challenge, however, must be "colorable." Boettcher, 759 F.2d at 721.

16 While it appears that the courts "have not expressly defined what a 'colorable' claim is," the Eighth Circuit

17 has held constitutional claims are reviewable when "not without some merit." Id. at 722 (quoting Jensen v.

18 Schweiker, 709 F.2d 1227, 1230 (8th Cir. 1983)). The Fourth Circuit in turn has indicated that such claims

19 should be dismissed if they "clearly" appear to be "immaterial and made solely for the purpose of

20 obtaining jurisdiction," or they are "wholly insubstantial or frivolous." Id. (quoting Holloway v.

21 Schweiker, 724 F.2d 1102, 1105 (4th Cir. 1984)). It seems these factors are applicable in the Ninth Circuit

22 as well. Id. (finding claimant's claim to be colorable, because it was not wholly insubstantial, immaterial

23 or frivolous); see also Evans v. Chater, 110 F.3d 1480, 1483 (9th Cir. 1997).

24      Where a claimant raises a "colorable constitutional claim of due process violation that 'implicates a

25 due process right [either] to a meaningful opportunity to be heard,' or to seek reconsideration of an adverse

26 benefits determination," therefore, judicial review of that claim will not be precluded. Evans, 110 F.3d at

27 1483 (internal citation omitted) (emphasis added); see also Udd v. Massanari, 245 F.3d 1096, 1099 (9th

28 Cir. 2001) ("[D]ue process requires that a claimant receive meaningful notice and an opportunity to be

REPORT AND RECOMMENDATION
Page - 10

heard before his claim for disability benefits may be denied."). Here, plaintiff claims the Appeals Council failed to comply with the Commissioner's regulations in not finding his request for review had been timely filed or that he had good cause for his late filing, and that such failure violated his due process rights. The undersigned finds, however, that plaintiff has failed to raise a colorable due process claim.

First, with respect to plaintiff's claim challenging the Appeals Council's finding that his request for review of the ALJ's decision was untimely, the undersigned already has found that claim to be without any merit. As discussed above, plaintiff was required to file his request for review within 65 days after the date contained on the notice of the ALJ's decision sent to him, but failed to do so. See 20 C.F.R. §§ 404.901, 404.968. Thus, even if it can be argued that failure by the Appeals Council to properly apply the above regulations to plaintiff's case alone rises to the level of a due process violation, no such failure or error in application occurred here. Second, also as discussed above, plaintiff has not shown the Appeals Council erred in finding that he lacked good cause for filing his request late. As such, the undersigned finds no due process violation on that basis as well.

Plaintiff may be arguing that the Appeals Council's failure to mention all of the circumstances that kept him from filing his request for review on time violated the requirements of 20 C.F.R. § 404.911(a)(1), and that this violation rose to the level of a constitutional due process violation. (See Dkt. #16, p. 7). But plaintiff has made no showing as to how the failure to do so, to the extent that any such failure occurred, actually deprived him of meaningful notice or an opportunity to be heard. Indeed, plaintiff was given the opportunity to, and did, file a request for an extension of time to file a request for review with the Appeals Council, was provided the opportunity and allowed to submit evidence and argument in support thereof, and was given notice of the Appeals Council's ultimate decision. Plaintiff also has not alleged, nor made any showing, that he received no notice or inadequate notice concerning his right to file his request for an extension of time to file a request for review with the Appeals Council.

Lastly, to the extent plaintiff is arguing that he was entitled to some sort of procedural due process greater than that which he received, the determination as to what process is due a claimant or recipient of disability benefits, depends, as pointed out by plaintiff, on the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

REPORT AND RECOMMENDATION
Page - 11

administrative burdens that the additional or substitute procedural requirement would entail.

Holohan v. Massanari, 246 F.3d 1195, 1209 (9th Cir. 2001). While plaintiff correctly sets forth the above language in his response to defendant's motion, he has failed to state what additional or substitute process he feels was due here, let alone to establish his entitlement to such process. Nor will the undersigned do so on plaintiff's behalf, without some indication in the record before the Court that the process he did receive was deficient. Accordingly, because there is no such indication in the record, the undersigned finds no due process violation here, and thus plaintiff also has failed to establish jurisdiction on this basis.

## CONCLUSION

Based on the foregoing discussion, the Court should grant defendant's motion to dismiss plaintiff's complaint under Fed. R. Civ. P. 12(b)(1). (Dkt. #11).

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 21, 2007**, as noted in the caption.

DATED this 29th day of November, 2007.

Karen L. Strombom
United States Magistrate Judge